## Case No. 8,940.

### MAENHAUT v. NEW ORLEANS.

[3 Woods, 1.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1876.

CONSTITUTIONAL LAW—LEGISLATIVE ACT—BONDS —CONTRACT—REMEDY—PRIORITY OF PAYMENT.

1. The act of the legislature of Louisiana, approved Feb. 23, 1852 [Acts La. 1852, p. 53], by authority of which the consolidated bonds of the city of New Orleans were issued, and which declared that a special tax should be annually levied on real estate and slaves, to raise the sum of $650,000 to be applied to the payment of the principal and interest of said bonds, is a contract with the bondholders, and remains unaffected by any subsequent legislation which seeks to impair or repeal its provisions.

2. The remedy of the bondholders for the enforcement of the contract contained in said act is at law.

3. Under the provisions of said act the holders of consolidated bonds are not entitled to priority of payment over other bondholders out of all taxes raised on real estate.

4. The bare fact that the consolidated bonds were older than bonds subsequently issued gives their holders no advantage over the holders of the bonds of later date.

[This was a bill in equity by Rosalie Maenhaut against the city of New Orleans for a preliminary injunction, and for the appointment of a receiver. The injunction was granted, restraining the city from diverting to other purposes the tax levied and collected for the purpose of paying interest on city bonds. Case No. 8,939. The case is now heard for final decree.]

John A. Campbell and E. Bermudez, for complainants.

B. F. Jonas, City Atty., and H. C. Miller, for defendant.

WOODS, Circuit Judge. The complainants are holders of bonds issued by the city of New

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Orleans by authority of the 37th section of the act of the legislature, approved Feb. 23, 1852. The bonds issued represent what is designated as the consolidated debt of New Orleans. The act declares that "the common council shall annually in the month of January pass an ordinance to raise the sum of six hundred thousand dollars" (this sum was increased by an act approved the same day to the sum of $650,000), "by a special tax on real estate and slaves, to be called the consolidated loan tax. * * * At the end of each and every year any surplus of the consolidated loan tax remaining in the treasury after the payment of all the interest and the expenses of the management of the debt, shall be applied to the purchase from the lowest bidder of such bonds issued under this act as have the shortest time to run." The act further provided that all ordinances, resolutions or other acts passed by the city council after the first day of January in each year should be null and void, unless the ordinance imposing the consolidation loan tax should have been previously passed. The act further provided that, after its passage, no obligation or evidence of debt of any description whatever except those thus authorized should be issued by the city of New Orleans, or under its authority, nor should any loan be contracted unless the same should be authorized by a vote of a majority of the qualified voters of said city. About $10,000,000 in bonds were issued under authority of the act, of which there are still outstanding over $4,142,000, and the complainants hold a part of this issue of bonds. The bill charged that there had been collected by the city authorities and deposited to the credit of the consolidated loan, the sum of $174,000, and asked for an injunction restraining the city from diverting this fund to any other purpose than the payment of the interest on the consolidated loan. It appears, from the report of the master, that for a long period after the passage of the act of 1852 collections of taxes were made and applied with regularity under the provisions of the 37th section of the act; that subsequently, for a number of years, there was no attempt to levy and collect the tax required by said section; that large sums collected under the act were misapplied and used by the city for other purposes than those prescribed by the act; that in 1872 the legislature passed an act to postpone the levy and collection of the tax for the sinking fund to pay the principal of the consolidated bonds, but provided for the payment of the interest; and finally, that in 1876 the legislature passed an act authorizing what was called the premium bond plan for paying the city debt, and repealing all laws for the levy and collection of the tax authorized and required by the act of 1852

On a former hearing an injunction was allowed, as prayed in the bill, forbidding the city from diverting to any other object the taxes collected by virtue of the act of 1852 for the payment of the interest on the consolidated loan, and the fund so collected has been applied as required by law and the rights of the complainants. On this, the final hearing, it is moved that the court decree that complainants are entitled (1) to a specific performance of their contract with the city contained in section 37 of the act of 1852; (2) to the levy, collection and exclusive application to the payment of the principal and interest of their bonds, of the sum of $650,000, to be levied upon the real estate of the city; (3) to a priority of payment out of the taxes raised by the city upon its real estate, to the extent of $650,000; and (4) to an injunction restraining the city from applying any of its revenues raised or hereafter to be raised by levy on real estate, to the payment of any other debt or demand, until complainants' claims as bondholders have been fully provided for and satisfied.

So far as the first two of these demands of the complainant is concerned, I am of opinion that the act of 1852 above mentioned contains a contract valid and binding on the city, and that the bondholders are entitled to exact the substantial performance of the contract. I have so held upon the former hearing of his case: Maenhaut v. New Orleans [Case No. 8,939]. The 37th section of the act of 1852, constituting as it does a contract between the city and the bondholders, stands unaffected by any subsequent legislation that seeks to impair or repeal its provisions. But the remedy of the complainants to enforce their contract is clearly not in equity, but at law, by the recovery of a judgment on their coupons and bonds, and by the writ of mandamus commanding the levy and collection of the tax required by law. The relief at law is plain, adequate and complete, and equity can not be resorted to. Heine v. Levee Commissioners, 19 Wall. [86 U. S.] 655.

The claim that the complainants are entitled to priority of payment out of all taxes raised on real estate, and to an injunction forbidding the application of taxes so raised to any purpose whatever until their claims are satisfied, cannot be sustained. The contract between the city and the bondholders contained in section 37 of the act of 1852 does not give the bondholders any priority of payment over other bondholders out of the taxes on the real estate of the city. The contract entitles these bondholders to have levied on the real estate of the city and paid them annually the sum of $650,000, and it entitles them to nothing more. The city may levy on real estate other sums to pay its current expenses or to pay its other debts. These bondholders derive no advantage from the fact that their bonds may be older than those held by other persons. If the city should levy and collect annually $650,000, to apply to the principal and interest of the issue of bonds held by complainants, and should so apply it, the contract of the city would be fully performed. The complainants would have no right to say that the city could not levy other taxes on its real estate

or pay such taxes in any order it chose. The questions presented by this part of the prayer for relief were discussed in the case of Ranger v. New Orleans [Case No. 11,564], and a result reached adverse to granting the relief prayed. The injunction allowed pendente lite will be made perpetual. All other relief prayed for must be refused.

---

MAFFET (CAMBIOSO v.).    See Case No. 2,-330.

MAGAURAN (COWAN v.).    See Case No. 3,-292.

McGAVICK (PICKETT v.).    See Case No. 11,126.

MAGDALENE, The.    See Case No. 2,056.